NOT DESIGNATED FOR PUBLICATION

No. 120,804

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY JOSE MARTINEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sumner District Court; R. SCOTT MCQUIN, judge. Opinion filed April 17, 2020.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Mitch Spencer*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., HILL and STANDRIDGE, JJ.

PER CURIAM: Anthony Jose Martinez, convicted of battery of a county corrections officer, claims the trial court erroneously admitted evidence of an uncharged crime committed by him and his conviction must be reversed and remanded for a new trial. Because we are not convinced that the statute Martinez says the trial court violated, K.S.A. 60-455, applied under these facts, we see no error. This is especially true because the trial court instructed the jury to not consider any of the evidence that Martinez now complains about. Additionally, considering the overwhelming evidence of guilt presented to the jury, any error from the admission of this evidence was harmless. We affirm.

1

*What video surveillance shows.*

In July 2018, when Martinez was in custody in the Sumner County jail, officers were moving him from a medical cell to a holding cell. An altercation between one of the officers and Martinez occurred in the holding cell. The action was recorded by surveillance cameras. The jury saw the video recording.

The video recording shows Martinez cussing at the officers as they took him into the holding cell. Once the officers left the cell, Martinez went to the right side of the cell door and peered out the window while removing a roll of toilet paper from his pants. As the officers were returning to the control center, they received a radio report that Martinez had a roll of toilet paper in his pants and he would cover the camera again. The officers returned to the holding cell to take the toilet paper.

Before the officers opened the cell door, Martinez hid the toilet paper under his crossed arms. Martinez was still standing to the right of the door. An officer ordered him to get on the floor. Martinez did not comply. He yelled through the door, "For what?" At that point, the officers opened the door and the corrections officer quickly stepped past Martinez into the center of the cell, turned, and pointed a Taser at Martinez. Another officer again ordered Martinez to the floor and to turn over the toilet paper. Martinez then dropped the toilet paper, swiftly turned to his left, and struck the first officer with his left hand, knocking the Taser out of his hands. Martinez then lunged at that officer. They began to wrestle and fell into the corner of the cell, just under the surveillance camera. The other officers responded, but Martinez did not comply with orders to "cuff up." To gain control, an officer shot Martinez with a Taser.

An officer then handcuffed Martinez, who was again cussing at them. One of the officers then removed the Taser prongs from Martinez. Martinez complied with orders to

get on his knees. The officers removed the handcuffs and left the cell. Martinez then sat down and quietly rested his head on his arms.

The officer who wrestled with Martinez was cut and received some scrapes from the incident. This led the State to file the charge of battery of a county corrections officer. See K.S.A. 2019 Supp. 21-5413(c)(3)(D) and (g)(3)(C). The jury found him guilty.

During his trial, the jury heard evidence of Martinez' interaction with the jail staff the evening before the incident. The night before—January 2, 2018—Martinez was in a disciplinary lockdown in a medical cell. At about 10:45 p.m., Martinez refused to allow another inmate—who was also on disciplinary lockdown—in his cell. Two officers had placed Martinez up against a wall with a Taser placed on his shoulder. The officers forcibly placed Martinez in handcuffs and took him to a holding cell. Martinez refused to kneel so they could take the handcuffs off, so the officers had to force him down. During this time, Martinez' arm hit another officer's chin. But the officers gained control, uncuffed Martinez, and left the holding cell without further incident.

At some point in the night, the officers allowed Martinez to return to his medical cell. Then at about 5:15 a.m., four officers again had to move Martinez to a holding cell because he was covering the camera with toilet paper. Martinez again refused to comply with orders to place his hands through the cell door so the officers could handcuff him. The officers went into the cell, got Martinez to kneel, and then handcuffed Martinez without further incident. Once the officers took Martinez into the holding cell, they took off the handcuffs and left the cell. These incidents all happened before the wrestling event with the corrections officer that led to the charges.

*The court did not violate K.S.A. 60-455.*

Martinez contends the court should have excluded the testimony about the evening incident where he possibly elbowed another officer in the chin. He argues this testimony should have been excluded as evidence of a prior crime under K.S.A. 60-455, because he *could have been charged*. He claims that the district court's limiting instruction to the jury was insufficient to prevent prejudice. He wants his conviction reversed and his case remanded for a new trial. The State contends Martinez did not object at trial to the testimony now challenged on appeal, and the testimony was admissible independently from K.S.A. 60-455 to show his interactions with corrections officers throughout the night prompting his battery of the officer. The State also argues that even if the challenged testimony were improperly admitted, the error was harmless.

Ordinarily, we would not consider this matter because Martinez did not object to the evidence's admission at trial. But we will look at the issue since it involves only a question of law arising on proved or admitted facts and is finally determinative of the case. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Martinez attacks this evidence in a unique way. He argues that because the State did not file a pretrial notice of its intent to use evidence of his other crimes under K.S.A. 60-455, his conviction should be reversed. In his view, the court failed to make the proper findings that the probative weight of the evidence outweighed the prejudicial effect of its admission. And it failed to give the proper instruction limiting its admission only to those areas that the statute allows when admitting that evidence.

A quick review of K.S.A. 2019 Supp. 60-455 helps us understand Martinez' argument. The law prohibits certain evidence for one purpose but permits its admission for other purposes, if certain procedures are followed.

"[E]vidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." K.S.A. 2019 Supp. 60-455(a).

"[E]vidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2019 Supp. 60-455(b).

"In a criminal action in which the prosecution intends to offer evidence under this rule, the prosecuting attorney shall disclose the evidence to the defendant, including statements of witnesses, at least 10 days before the scheduled date of trial or at such later time as the court may allow for good cause." K.S.A. 2019 Supp. 60-455(e).

The statute intends to prevent the admission of evidence of prior bad acts so that it can be used to infer guilt. This inference detracts the fact-finders from finding facts to support their verdict by basing the finding of guilt on an inference. This law recognizes that prior acts and convictions can be powerful evidence that is prejudicial to an accused. But the same law recognizes that the evidence has a real purpose in proving such relevant elements of a criminal prosecution as motive, intent, plan, and so on. The law calls for the judge to be the gatekeeper for the admission of that evidence. But it is not automatic that admission of this evidence calls for a reversal and a new trial. *State v. Preston*, 294 Kan. 27, 35, 272 P.3d 1275 (2012).

The State argues that this evidence was offered only to show that Martinez' conduct was part of the series of events leading to the charge of battery of the corrections officer. It gave the jury an understanding of Martinez' conduct as well as the actions of the various correction officers. This evidence shows a course of conduct between Martinez and the correction officers that started the night before and continued to the

5

following morning. It helped counter Martinez' defense that the officers were acting improperly. This argument centers on the concept of res gestae.

A recent Supreme Court case offers us guidance. In *State v. Butler*, 307 Kan. 831, 861, 416 P.3d 116 (2018), the court made it clear the statute does not apply to all evidence of prior crimes or bad acts.

"K.S.A. 60-455 does not apply if the evidence relates to crimes or civil wrongs committed as a part of the events surrounding the crimes for which [the defendant] was on trial—that is, the res gestae of the crime." *State v. King*, 297 Kan. 955, 964, 305 P.3d 641 (2013); see *State v. Peppers*, 294 Kan. 377, 389, 276 P.3d 148 (2012) ("Our decision in [*State v.*] *Gunby*, [282 Kan. 39, 144 P.3d 647 (2006),] eliminated res gestae as an *independent basis* for the admission of evidence. It did not eliminate the admission of evidence of events surrounding a commission of the crime under the applicable rules of evidence.").

> "Res gestae refers to acts that occurred 'before, during, or after the happening of the principal occurrence when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence.'" *State v. McDaniel*, 306 Kan. 595, 616, 395 P.3d 429 (2017).

When we apply the rule from *Butler* here, our solution to the question becomes clear. This evidence about the prior evening's events explained why the morning incident happened. Martinez testified that because he was accused of elbowing an officer during the evening incident, he was put in a red jumpsuit to show his disciplinary status. Because he was "in reds," his personal belongings were taken away, which made him retaliate by covering the cameras. Covering the cameras warranted his second move to a holding cell that morning, and his anticipation of this led him to prepare by concealing toilet paper in his pants. The surveillance discovery that Martinez had toilet paper led to the correction officer entering the holding cell with his Taser drawn while Martinez was

6

noncompliant with orders to get on the floor. Based on Martinez' own account of events, the wrongs he committed the evening before were a part of the events surrounding the morning battery of the corrections officer—the crime for which he was on trial. The evidence was part of the same occurrence—in other words, res gestae. This res gestae evidence was not covered by K.S.A. 60-455. We move now to the court's instruction about this evidence.

*The court instructed the jury not to consider this evidence.*

After the parties rested, the court observed that some of the testimony about the evening incident, coupled with the fact that Martinez was in the county jail at the time, warranted a limiting instruction to the jury. Martinez objected at first, but then agreed to the instruction. The parties agreed the limiting instruction would preclude the jury from considering any evidence that "may have" showed Martinez committed other crimes.

Instruction No. 3 is clear:

"Evidence has been admitted tending to prove that the defendant may have committed crimes other than the present crime charged. You should not consider this evidence in arriving at your verdict."

Despite agreeing with giving the instruction at trial, Martinez brushes this instruction aside on appeal by arguing that it merely shows the court was aware of the problem with admitting the evidence of the events of the night before. He gives no thought to the consequences of the court telling the jury not to consider this evidence. We do. It cures any error.

The power of instructions to cure errors is revealed in *State v. Logsdon*, 304 Kan. 3, 39-40, 371 P.3d 836 (2016). In *Logsdon*, our Supreme Court ruled that the defendant

7

had presented no reason to suspect the jury improperly considered the evidence despite being instructed not to do so. And the court's review of the record revealed no reason to suspect the jury disregarded the instruction. Thus, the court's jury instruction removed any damage caused by admitting the evidence. Here, with Martinez' agreement, the jury was told to disregard the evidence. Martinez has not shown us any evidence that the jury disregarded the instruction. Like the court in *Logsdon*, the instruction here cured any damage that may have occurred.

*Any error here was harmless.*

We do not want to disregard the State's argument about harmless error. The erroneous admission or exclusion of evidence is subject to review for harmless error under K.S.A. 2019 Supp. 60-261. If the error, however, implicates a constitutional right, the effect of that error must be assessed under the constitutional harmless error standard—whether the party benefiting from the error proves beyond a reasonable doubt that the error would not or did not affect the outcome of the trial given the entire record. *State v. Williams*, 306 Kan. 175, 202-03, 392 P.3d 1267 (2017). Under K.S.A. 2019 Supp. 22-3413(a), the clearly erroneous standard is a basis for determining whether an error requires reversal. *State v. Williams*, 295 Kan. 506, 510-16, 286 P.3d 195 (2012).

When we look at this testimony in the context of the record, we conclude that the evidence about the evening incident did not affect the outcome at trial. The correction officers testified consistently about the morning's events. Their testimony was supported by the video surveillance footage that clearly showed Martinez did not comply with the officers' orders, he was displaying antagonistic behaviors, and he began the physically aggressive contact with the corrections officer. Martinez also admitted to slapping at the officer to make him drop his Taser. Martinez acknowledged he chose to behave antagonistically toward the officers because he lost privileges and personal belongings.

He also testified he knew that whether he kept certain belongings was within the discretion of the officers.

The State has established beyond a reasonable doubt that the evidence, even if erroneously admitted, did not affect the verdict. Any error from its admission was harmless.

Affirmed.